JULY 1829.

Robinson
v.
Rapelye and
Smith.

---

## LUCAS v. HICKMAN.

It appears that in this State, writs of *ne exeat* may be properly grant-ed in the following cases:

1. Where the demand is exclusively equitable, whether a sum certain be due or not, and the defendant is about to remove beyond the jurisdiction of the Court.
2. Where Courts of Law and Equity have concurrent jurisdiction, the defendant being about to remove, and where bail has been not obtained, it will be granted in aid of the action at law.
3. Where the two Courts have concurrent jurisdiction, and no action at law has been commenced, but suit in equity instituted; the removal of the defendant will be restrained.
4. In cases of extreme necessity, and where it becomes necessary to prevent a failure of justice. But as to this last, *quaere.*

JOHN R. LUCAS, filed his Bill in Equity, in Madison Circuit Court, in August, 1827, against John P. Hickman, for a *ne exeat.* He set forth that in 1819, Pope and Hickman as copartners, became indebted to the firm of Nance & Co. in $6662, by a note made by them payable to J. Brahan, and indorsed in blank by Brahan; that the note was delivered to Nance &co., and that afterwards the complainant acquired the equitable interest in it. That $6408 of said note remaining unpaid, the complainant entered into a negotiation with Pope, as the representative of Pope and Hickman, for the payment of the residue, and agreed to receive in payment a note made by S. D. Hutchings & Co., and Turner, as makers, and of E. Harris as indorser, for the same sum. That such a note was received by him as a genuine note, he relying solely on the solvency of Turner, as one of its makers; that when this note became due, payment was refused, and due notice given to the supposed indorser; that suits were immediately brought against the supposed makers and indorser; that Hutchings died insolvent, Bradford his partner left the State insolvent; that Harris likewise left the State insolvent; that

Turner pleaded that he never executed the note, and a verdict and judgment were thereupon found in his favor; that the complainant is informed and believes Harris's name also to be forged. That Pope, for Pope and Hickman, were notified of all the proceedings had on the substituted note; that in January, 1823, a suit at law was commenced in the name of Nance, & Co. for the use of the complainant, against Pope and Hickman, to recover the amount due, in which process was executed on them, and which is still pending; that Pope at the commencement of this suit lived in Madison county and was insolvent, but that Hickman then resided in Lawrence county, and was amply able to satisfy the amount sued for; that complainant under those circumstances deemed it unnecessary to require special bail of either of them, and that at law he cannot now obtain it; that Pope is still insolvent, and that Hickman is in the act of removing himself and property to the State of Tennessee, having already removed himself and family, and a large portion of his personal estate, that he has sold the greater portion of his real estate, and is now present, making arrangements to remove shortly the remainder of his property, declaring his intention to remove entirely, &c.; and that the complainant, unless he obtains the aid of this Court, will not be able to enforce the recovery he is entitled to, by any process in this State; and thereupon he prays a writ of *ne exeat* against Hickman, to restrain him from leaving the State, unless he give security for his personal appearance to answer the judgment, &c. The writ was granted in vacation, and Hickman gave security.

At November term, 1827, the defendant prayed the Circuit Court to discharge him, and on his motion the Bill was dismissed with costs. This decree is here assigned for error by Lucas.

KELLY and HUTCHISON for the appellant, argued, that the ancillary power of Chancery was properly exercised in this case, in granting the *ne exeat*; that in this country, it is a remedial and not a prerogative writ; that it has long been allowed on equitable demands in Chancery, in analogy to bail at law, [a] and also where the demand is legal and equitable. This is no hardship, because the party might have been held to bail at law, and can as easily give security on the *ne exeat* as the bail. [b] It has been allowed in aid of a Court of Law, to prevent a failure of justice, where the defendant and his bail were about to remove with their property beyond the reach of an execution, before judg-

*a* 1 Atk. 552,
2 Atk. 409. 5
Ves. jr. 578.
Ib. 91, 96. 8
Ves. jr. 593.
1 Ves. and B.
129.
*b* 3 John. Ch.
R. 412. 1
John. 1.

ment could be had. *a* It has also been allowed after judgment, and of course where the demand was purely legal. *b* This shews that the rule confining the remedy to demands, technically equitable, is not inflexible. Our statue of 1823, *c* enacts, that the *ne exeat* may issue, not only where a sum is due, but where the complainant has an equitable claim or demand. The act of 1807, *d* provides, that "it may issue when the case may require." In the present case, the suit at law was brought before the passage of the act of 1827, allowing bail to be taken at law after suit brought; that act is restricted to cases to be brought after its passage, so there was no remedy but by the application to the Court of Chancery.

Hopkins, for the defendant.

By JUDGE CRENSHAW. Where the action is purely legal, as ancillary to an action at law, it may be laid down as a rule generally correct, that equity will not interfere.

In the case of *Seymour v. Hazard*, *e* it was settled that the writ of *ne exeat* will not be granted for a debt due and recoverable at law; and that the writ was applicable only to equitable demands due in the nature of a debt.

In the case of *Porter v. Spencer*, *f* the same principle was recognized as being the uniform law, at least down to the time of Chancellor Eldon. In that case it is said that the writ would be denied if the demand was actionable at law; though the party was about to remove with his effects beyond the jurisdiction of the Court.

Since the time of Eldon however, the law seems to have undergone some change, and it is now well settled in the English Chancery, that in cases where the Courts of Law and Equity have concurrent jurisdiction, and the defendant has not been held to bail in the action at law, the writ will be granted in aid and to give effect to the action at law.

The case of *Porter v. Spencer*, was indeed a peculiar and strong one, for the interposition of a Court of Equity. The action at law had been brought to recover the balance of an account; the defendant had been held to bail, and he and his bail were about to remove from the State permanently, without leaving any property behind. The Chancellor hesitatingly granted the writ, on the ground of the necessity of the case, and to prevent a failure of justice.

I think it obvious, that the Legislature of this State,

*Margin notes:*

JULY 1829.

Lucas v. Hickman.

*a* Porter vs. Spencer, 2 John. Ch. R. 169.
*b* 3 P. Wm's. 312.
*c* Acts of 1823, p. 11.
*d* Laws of Ala. 487.

*e* 1 John. Ch. R.

*f* 2 John. Ch. R. 169.

by the act of 1823, did not intend to authorise the granting of writs of *ne exeat* in cases where the debt or demand was purely legal.

The ninth section of the act provides "that it shall be lawful to grant writs of *ne exeat,* not only in cases where a sum of money is due, but also where the complainant has an equitable claim or demand against the defendant."

Before the psssage of the act, it must have been considered that the writ of *ne exeat* could issue in cases only of an equitable nature, in which it was also necessary to swear to a sum certain; it seems to have been doubtful whether the writ could issue where the party could not swear that a sum certain was due, though the demand was equitable in its nature.   This doubt the Legislature intended to remove by the enactment of the law; and now authorises the writ to be granted in all cases of an equitable nature, whether a sum certain be due or not.

From what has been said, the following propositions are clearly deducible: 1. In cases where the defendant is about to remove beyond the jurisdiction of the Court, and the demand is exclusively of an equitable nature, whether a sum certain be due or not, the writ of *ne exeat* will be granted, on a sufficient affidavit.   2. Where the Courts of Law and Equity have concurrent jurisdiction, if the defendant is about to remove, and has not been held to bail in the action at law, the writ will be granted in aid, and to give effect to the action at law.   3. Where the two Courts have concurrent jurisdiction, and no action has been commenced at law, but suit has been instituted in equity, the writ will be granted if the party is about to remove.   4. Where from the extreme necessity of the case, and to prevent a failure of justice it becomes necessary, it also appears that the writ will be granted.   But this fourth proposition, though it seems to be sanctioned by authority, I have some hesitation in admitting to be law.   "Extreme necessity, and to prevent a failure of justice," appears to me to open a door too wide, even for the Chancellor's discretion, and which in many instances may be liable to abuse.

In the case before us, it does not appear that Hickman was removing with an intention of evading justice, or of defeating the operation of the judgment which might be obtained at law; and though removing out of the jurisdiction of the Court, it yet may have been his intention to pay the debt after the cause should be entirely settled.   His removal to a place not distant, and where it would be near-

ly as convenient to pursue him with the judgment, as to bring suit here against his bail, cannot, of itself, furnish sufficient ground for equitable interposition.

In the foregoing opinion, the Court are unanimous.

Decree affirmed.

JUDGE WHITE presided below, and did not sit.